Thank you. In fact, the next case is Biolumix v. Centrus INTL. Are you ready to proceed, Ms. Harris? I am. Thank you. Good morning, Your Honors. May it please the Court, I'm Toni Harris on behalf of the Centrus International, and this is an appeal of the District Court's interlocutory order denying Centrus's motion to dismiss in favor of arbitration the Edens patent-related claims and all of the claims as alleged by Biolumix. Are you also asking in the alternative that we just ordered him to stay? I mean, does this, whether or not he's granted a stay of the District Court proceedings pending arbitration, is that also an issue you're raising with us? Well, it's actually an issue pending at the District Court. We've filed a motion for stay, and the Edens and Biolumix have filed a response, in fact, a supplemental brief in opposition to that motion for stay, and there's been no decision on that. And then what's, so nothing's happened, but they haven't proceeded to adjudicate the remaining claims before the District Court. Correct, Your Honor. And what's going on with the arbitration proceeding? Nothing's going on, actually. Nothing has started. Everything has sort of been... Is that by agreement of the parties, or is that... Yes, Your Honor. And in this case, I know that the Edens and Biolumix have raised the argument of whether this Court even has jurisdiction over Biolumix as a non-signatory to a written arbitration agreement. And I'm sure the Court is aware, on Monday, just two days ago, the Supreme Court decided the case of Arthur Anderson v. Carlisle, which reversed and remanded the key case on which Biolumix relies in support of its argument that the Court does not have jurisdiction. So obviously, in light of that case by the Supreme Court, this Court does have jurisdiction over Biolumix, although it is a non-signatory. Turning to the Edens patent claims, the issue... But if Biolumix is a non-signatory, it goes to the merits, does it not, of whether or not there's an arbitration agreement that binds Biolumix? If I understand your question, Your Honor, yeah, that would be the merits to be decided as far as the District Court needs to make a decision as to whether Biolumix is bound by the arbitration agreement. In this case, it's our position that the District Court decided that in denying our motion to dismiss Biolumix's claims in favor of arbitration, the District Court made a decision that, as a non-signatory... I think it did. I think it decided that Biolumix is not an alter ego of the Edens. And it's also our position, as stated in our brief, that that decision was really based on, with all due respect, minimal discovery conducted only by the Court, really sort of impromptu during our hearing, and the party... Well, I'm not saying that the Court shouldn't be permitted to inquire into those matters, but it's our position that whether or not Biolumix has investors has really no bearing on the issue of whether it might be the alter ego. We have no idea how Biolumix keeps its books, how they manage their money, all the issues that go into the alter ego issue. In addition, we want to take discovery with regard to all those issues, but then on appeal, Biolumix and the Edens provided additional information that was not provided to the District Court during that impromptu discovery, wherein Biolumix, in its appeal brief, indicated and admitted that not only are the Edens employees of Biolumix, but they've gone so far as to say that they do the research and development on behalf of Biolumix, and then said that Biolumix is actually the owner of the Biolumix instrument, which was embedded by Ruth Eden. So based on our reply brief, the information in our reply brief, in light of Biolumix's admissions with regard to that, really Biolumix is the assignee of the Edens. It's now the owners of these inventions, and by the terms of the agreements, the 1999 signing agreement, clarification agreement, the terms of that 1999 signing agreement bound the Edens and Centris' successors, assigns, agents, representatives, and so forth. So by the fact that the Edens have admitted that they've assigned that. Can I ask you a little bit? Why do you focus expense and time just over whether we go to arbitration? Well, Your Honor, the parties agreed and had in their agreement that any disputes relating to these agreements should be submitted to arbitration. So Centris has just decided to invoke that provision of the agreement. It wants to arbitrate the claims. Do you think the district court was driven? So why did the district court do what he did? I mean, I think part of it is not that. If the district court decides that there's no infringement at all with respect to these products, this whole case goes away, does it not? I mean, there's no need for arbitration. There's no need for any of this stuff, correct? And wouldn't that be an expeditious way or at least an expeditious alternative in which to bring this to closure? Not necessarily, Your Honor, because if the court decides that there's no rigid contract, I think the infringement claims go away. But if the court decides there was no infringement, then I don't think the rigid contract claims necessarily go away. And I'll tell you why. And that's because in the 1999 assignments and the various other assignments and clarifications, not only did the Edens assign the actual patents, the 873, the 576, and the 338 design, they also assigned the know-how of the technology and any improvements thereon. So then another issue becomes, is this biolumics instrument, even if it doesn't infringe per se on these patents that were assigned, is it an improvement that was assigned to those issues? Those issues are for arbitration. Those issues have been forwarded to the arbitrator. But why doesn't it make sense for the district court to retain the IP allegations because he may find that there's no infringement at all, and then at least those claims go away? I'm confused about why. If I understand, you said why doesn't it make sense for the court to retain those IP claims? Yes. Okay. As we said in our brief, if the court retains the IP claims and the arbitrator retains the rigid contract claims, really it's the same underlying factual issues. Why are they the same factual issues? They're completely different issues. Well, in order to determine in part whether the agents have breached the contract, you have to look at the scope and extent of what they assigned to centrists. And in doing that, the arbitrator and the court will need to construe the claims of the patents in order to determine the scope of the patents and what was assigned, and then whether this biolumics instrument, whether the claims read on that biolumics instrument. So in both a breached contract case, the claims, and in the patent infringement claims, they will be dueling. And as we described, as we explained in our brief, the court could come to a different conclusion as to the construction of the claims than the arbitrator and which one rules. Well, looking at this 2002 agreement, it talks about this agreement. It doesn't seem to sweep in things that happened two or three years later. Actually, the… This agreement, it says that over and over again. What the… If I can go back, the agreement says that, in the introductory paragraph, says that this agreement clarifies the understanding with regard to the assignment of intellectual property pursuant to the 1999 assignment. Actually, it doesn't say that if we're talking about the same one on page 196. It says this letter clarifies. I'm not looking at the wrong… You're probably right. I took down a portion of the quote. That's on 106. I think it's 196. It's probably the same document. It's probably in there a couple of times. But yes, the introductory paragraph does say this letter clarifies the understanding with… …which occurred pursuant to that assignment agreement. But it does not incorporate by reference or make the 1999 agreement subject to arbitration. Well, if you look at paragraph 1 on 106, that paragraph states that the assignment agreement is the only agreement recognized by the Edens and Biases relating to the assignment of certain intellectual property identified in Schedule A to that agreement. And all other assignment agreements, whether dated before or after the assignment agreement, are void and of no effect. So it references the 1999 agreement. Well, it certainly references the agreement. But the arbitration provision, as Judge Rader pointed out in paragraph 9, talks about disputes relating to this agreement, that is, the 2002 agreement. Well, in our position, as it says, this is a letter that clarifies the understanding that the parties have in the 1999 assignment agreement. This letter does not say that it supersedes the 1999 assignment agreement or that that agreement is now void and of no effect. In fact, it says that that is the only agreement recognized. And by this letter, we're only clarifying some of the terms. If you get to, I think, Judge Rader and Judge Lind's point is the obligation to arbitrate deals with disputes of this agreement, this agreement being the 2002 agreement. As you recognize, the assignment agreement, the 1999 agreement, is in existence and is a separate and distinct document. So why are the terms of the assignment agreement in 1999 subject to arbitration? Well, it's our position that this, although this is a separate and distinct document, they comprise one agreement. Paragraph 2 goes on to say nothing in this clarification limits their rights in the other agreement, the assignment agreement. That tends to say they have, they're independent. The 1999 agreement is separate from the 2002. It was separate from the 2004 agreements. I think that the answer to that is twofold. One, the Eames and Bile limits in their pleadings, in their briefs, really have acted and have defined those agreements. Not only the 1999 agreement, the 2002 agreement, but also the amendment to the IP assignment agreement as one agreement. In fact, in that IP assignment agreement, turning to page A130, and I just want to make a quick note here that I did want to preserve the balance of some time later and I'm down to a couple minutes, but that in paragraph A, it says that the Eames assigned certain intellectual property by the 1999 agreement, and then paragraph B says that certain terms of the original agreement were affirmed and clarified pursuant to a letter agreement, and the parties now wish to amend the original agreement clarification agreement. And on page 131 in paragraph 7, it says that except as expressly modified by this amendment, the original agreement clarification agreement remained in full force in effect. And I think to go back to the question of why are they one agreement, I think that by the terms, being a letter that clarifies the understanding and without superseding and voiding that agreement, the parties all understood it to mean that they were just clarifying the terms of their understanding and that they comprise one agreement. But the material that you just read us is exactly the opposite. It's not one agreement, but these are separate agreements. Well, I think that in order to identify them, they identified them by the names of the documents, but they always, in all of their pleadings, mentioned the biases contracts, and the biases contract, I should say, and they identified them as comprising all of those different documents. I'll reserve the balance of my 17 seconds. We'll give Ms. Harris two minutes of rebuttal time, and if you'd give Mr. Falkenstein an additional two minutes, he needs to use it. Thank you, Your Honor.  If it pleases the Court, I'm Peter Falkenstein, representing all plaintiffs in this matter. I just want to begin by reiterating and amplifying what this Court has been focusing on, which is the fact that the arbitration agreement is, in fact, limited to the 2002 clarification. Wasn't there a problem for you? Was that an issue you raised before the District Court? Well, we raised the Alcocor case as indicating that the arbitration clause was limited in scope, and that it was, in fact, confined to the 2002 agreement, and that the 2004 agreement was not necessarily brought under the arbitration agreement, the assignment agreement. The Alcocor case, which we cite, I believe, on page 55 or so of our brief, really controls this issue. But if that's the position, then you agreed to send – you would have had to send the other claims to arbitration either, right? You agreed to send the other claims to arbitration. We agreed to send certain claims to arbitration out of a matter of prudence, because as opposed to the infringement claims, there is perhaps more of a relationship of the contract-based claims to the contracts at issue here. Now, the fact that you may read these contracts together does not necessarily mean that every provision of each of these documents applies to every contract. Obviously, there's a relationship, because the 2002 letter does clarify certain terms. And in that sense, it relates to the 1999 agreement, which, in fact, does provide for assignment of improvements, which is an issue they've raised. But as Your Honor noted, that's not an identical claim as to the infringement claims. The 2002 letter, in fact, defines the assignment agreement of 1999 as a defined term, capital A, capital A, recognizing it as an independent document. And it refers to that in those terms repeatedly, the assignment agreement as the defined 1999 agreement. It also defines the 2002 agreement as the agreement lowercase a. And then, as Judge Rader pointed out, in the arbitration clause, arbitration is compelled as to disputes relating to this agreement, lowercase a. The parties understood that these are two different documents. So even though there are terms in the 2002 agreement that clearly do modify and clarify certain terms of the 1999 agreement, the arbitration clause is not one of them. Whether that was a mistake by the parties, we can't determine that. But certainly, the plain language of the agreement identifies them as separate defined documents and restricts the arbitration clause to the 2002 agreement. Therefore, only claims that are related to this document are referable to arbitration. And is that the case with respect to the claims that everybody agreed and occurred to send to the arbitrator? Possibly not, Your Honor. And if that's the case, may it help that we agreed to stipulate to send some claims to arbitration that perhaps we shouldn't have. So you're foreclosed from raising the arbitrability question before the arbitrator? I don't know that we're foreclosed from doing that. At this point, we stipulated to that in the court below. So we certainly are not raising it here on a cross appeal. I would consider that to be bad faith. And if we made a mistake in agreeing to send certain claims to arbitration, so be it. But that does not mean we have to send the claims that the district court retained jurisdiction over, which clearly are distinct and they are discrete. The analysis of the infringement claims requires only two things. It's construction of the claims or the patents in suit. So why not, I mean, if you are in this position rightfully or wrongfully, where you're going to be going to arbitration with respect to certain claims, doesn't it make sense for all parties to at least have the district court stay the proceedings with respect to the remaining claims that are within its jurisdiction? Well, that, of course, is a decision for the district court, which is, as counsel said, pending before that court. It's not of an appeal here, because there is a motion by centrists to stay the case in a district court pending arbitration, depending upon what your Honor's rule will remain in the district court. But it's our intention, in fact, most likely to file a motion to stay the arbitration pending the district court resolution. We believe that the patent infringement claims are, as you said, at the basis of the suit. They are discreet. And the better forum for that is the district court. We have a district, a federal judge with the right of appeal to this court, which has expertise in patent infringement claims, rather than relying on a private arbitrator to determine these critical issues. And what's even more important is that BioLumix does not stand in the shoes of the Edens. This is an independent corporation with numerous investors. It's carrying on business other than simply this invention that's at issue here. And that company has a right to determination that it is not infringing on these patents or on the trade dress, which is also a claim that there's clearly no relationship of any trade dress claim to anything in any of these contracts. So that clearly would stay in the district court anyway. But BioLumix has a right to determination that as a company it's not an infringer. If there are then additional issues that they want to raise as to the Edens individually having violated the terms of their employment contract with biases or centrists and having misappropriated trade secrets, those are different issues. And they can be determined in arbitration. But the issue of efficiency certainly is one for the district court to determine in the first instance. And efficiency concerns cannot compel arbitration of claims that do not belong in arbitration. Why not have everything in one forum instead of risking disjointed decisions? Why not send everything to arbitration and avoid fighting over these procedural details? Well, it's just the reasons that I've been speaking of in the last two minutes, is that we believe that the district court, with a right of appeal to the federal circuit, is the proper place for patent infringement claims to be heard. And the district court agreed that under the Sixth Circuit standards, those claims are simply not subject to arbitration. The reason being that the Sixth Circuit adopted the standard, rejecting the standard, that any claim that touches upon matters covered by an arbitration agreement is subject to arbitration. The NCR case last year rejected that standard and adopted a standard that any claim that can be determined without, that any particular claim that can be resolved without reference, without examination or interpretation of the underlying agreement is not subject to an arbitration clause. And clearly that's the case with the infringement issues. Now, your D.J. claim is on behalf of the corporation, Biolumix, but also the individuals of the Edens? Who's the plaintiff here? All three of them are the plaintiff. And the reason that we did it that way is obviously because we received a cease and desist letter from Centris' counsel claiming that the Edens and Biolumix are doing all of these things, infringing on the patents. With the Edens as individuals or as corporate officers? They didn't specify. They didn't specify. And so wanting to get this resolved, you really had no choice but to name them all, because the letter of March 21, 2008, which is in the appendix, accuses them all in a speculative fashion. And the company needed to go forward, and the Edens had been now accused personally, individually. And so they really had no choice but to file for the declaratory judge match. But the patent infringement issues against both of them would be the same, assuming that they're both subject to patent infringement claims. So that's why the district court reserved all the IP claims, or the infringement claims, as we call it, against both the Edens and Biolumix in district court. The contract-based claims that we stipulated to will be heard in arbitration. This is done all the time. The NCR case out of the Sixth Circuit, which adopted the new standard, in fact, bifurcated as to various claims, sending some to arbitration and retaining others before the district court. But isn't Judge Rader correct when it moves to the fact that the arbitrator is going to be deciding the same? He's going to have to just do the claims correct. He's going to have to be duplicating or doing the same thing that the district court does. Well, that's a possibility unless one of these proceedings is stayed pending the other. And that would be a determination for the district court. They've moved to stay the district court proceeding pending the arbitration. What that would mean is they get a second bite at the apple. If they lose in the arbitration, they can then go forward and tie it up for a couple more years with a patent infringement claim. We believe that the patent infringement issues are relatively simple here. You need a market hearing. You need to construe the claims, compare the devices, and get a ruling on infringement, which would then be raised judicata in the arbitration. And they may decide if they lose that infringement case that they're not going to go forward. If they choose to, they may go forward. But the mere fact of efficiency is not sufficient to compel arbitration where arbitration is not warranted, especially where you have a non-signatory to the arbitration clause. The fact is, by Illumix, by no stretch of the imagination, even if his court were to rule that the claims that were retained by the court as to the Edens are sufficiently related to the arbitration agreement to send it to arbitration, there's no basis to send by Illumix there. It's an independent company. It does not stand in the shoes of the Edens. It has numerous independent investors. It does business on its own. And it's now being threatened with patent infringement. The Chavish court, which set the standard in the Sixth Circuit for binding a non-signatory, set out five principles by which you may bind. Incorporation by reference, which did not occur here. Estoppel. Assumption. Alter ego. Veil piercing slash alter ego. Correct. That brings us to the factual finding without discovery, doesn't it? Without formal discovery. And, of course, as this court knows, in the Data Treasury case, this court made it clear that factual findings in the district court are reviewed for clear error, not de novo. The factual finding of alter ego would be reviewed for clear error. The allegation of alter ego was made in their reply brief for the first time in the motion to dismiss. It was made based on sheer speculation and merely upon their searching the corporate records in Michigan to see what the organizational papers of the company were, which showed Ruth Eden as all four officers back in 2007. Not unusual for a close-to-hell corporation, which it was at that time. Veil, however, did put in evidence an exhibit to the 2008 annual statement, which showed there was now another officer, Peter Savarino, who was as a secretary. Nonetheless, they claimed in the court below that Ruth Eden was the officer in all four positions. That does not establish even a reasonable basis to suspect alter ego. If that were the case, every close-to-hell corporation would be subject to discovery as a possible sham corporation. There was no allegation of fraud. There was no allegation of improper purpose, which are required for a finding of a sham corporation. Judge Tarnow understood this implicitly, that this was just an argument thrown in there to try to find some way to compel arbitration for violence. The judge accepted the representation that there are 12 independent shareholders. Do you want to let people dodge their arbitration agreements by creating a corporation? Of course not. But there was no basis to even conclude that or even to suspect that. The only basis that they propounded to the court was that the initial incorporation papers listed one person as all four officers. That was it. No allegations that the corporation has done anything wrong. There are thousands, tens of thousands of close-to-hell corporations that have incorporated in that manner. And by the time they raised that argument, there was already a new officer. The affidavit of Ruth Eden indicates that there are 12 arm's-length investors unrelated to them. We made the representations to the court. Judge Tarnow... The researchers and apparently the crux of the corporation is donated by the Edens. No. The crux of the corporation donated? They are shareholders. I believe they own approximately 51%. But there are 10 independent investors who own nearly 50% of the company. There are additional employees, which is a matter of the record. This is a company that is in the business of producing biochemical testing, microbiological testing devices. There was no allegation of anything untoward, except that the original incorporator initially held all four positions. That's not enough to necessarily trigger full-scale discovery into this. And it's an abuse of discretion standard as to granting discovery. The court obviously found that this was essentially a sham issue, one that did not have any basis, and ruled that the company was not an alter ego, because they did not raise enough of a question to bring that issue to the floor, or to require discovery. And it's not a de novo review. It's an abuse of discretion standard as to discovery. It's clear error as to the underlying factual claim. And I don't believe there's any basis to argue that there was clear error here based on the representations and the affidavit of Ruth Eden that was placed into evidence. The final argument that they raised to try and now bring in biolumics, which essentially, I feel, they pretty much abandoned the alter ego argument, arguing it perfunctorily. But then they argued that as an assign of the Edens, biolumics is bound by this arbitration agreement. First of all, the successorship clause that they cite is in the 1999 agreement. It's a standard successorship clause which finds the parties and their heirs, successors, legal representatives, and assigns, period. A standard successorship clause like this refers to transfer of rights and obligations in the contract. An heir taking from an individual by devisement. A successor corporation taking from a prior corporation. A legal representative standing in the shoes of the party. An assignee of the contract taking the obligations and rights of the contract. That's not what happened here. There's no anti-assignment clause in the contract of the 1999 agreement. Had there been, the successorship clause would have said successors, representatives, and permitted assigns, which is also standard. It's assignment of the contract. Biolumics is not an assignee of the contract. It is not claiming any rights under the contract. It is not reaping any benefits of the Edens contract of biosis. They are seeking to bind it to that, based on that successorship clause, based on a presumed assignment of some intellectual property that may be the subject of that agreement. To take it one step further, suppose the Edens had signed an unrelated patent to a company such as Biomeriu. And then, that makes Biomeriu an assign of the Edens. Then Biomeriu invents a technology that Centris believes infringes the patents that are the subject of these agreements. Patent to its extension, they could argue that Biomeriu would be held to that arbitration agreement. Thank you, Mr. Faulkner's man. Thank you very much, Your Honor. I didn't do my two minutes, or did I? You did. Oh, thank you very much. You said it at the beginning. Oh, okay. Thank you. Thank you just greatly, Your Honor. First of all, when we talked earlier about the discovery issue, and under the first options case in the judge case, which Mr. Faulkner is going to refer to, the district court is supposed to make a determination as to whether biolimics is bound to the arbitration agreement based on an intense factual inquiry. And based on the minimal discovery taken by the district court, with all due respect, in the hearing of the underlying motion, it was hardly an intense factual inquiry, as I said, that Centris wanted to get into. And I also want to address the NCR case that Mr. Faulkner referred to. That is a case, as he said, where the issue of relatedness is determined by whether one can maintain in action the claim without reference to the agreement. And here, there is no possible way to maintain a patent infringement claim, or the debt action for non-infringement, actually, without referring to the agreement, because if one looks only at the patent itself, one sees that the Edens are the named inventors, and without any other agreement, the Edens would be the owners, and therefore couldn't infringe their own patents. So one needs to look outside of the patents and to the agreements to understand the scope and extent to which the Edens assigned their bundle of rights to Centris. Also, I wanted to get back to the point that I talked about earlier in the void and of no effect, with A106 in the paragraph number one. In talking about whether this is an entirely separate agreement, that paragraph talks about the assignment agreement being the only agreement recognized, and any agreement there entered into before or after the assignment agreement is void and of no effect. If this clarification agreement was considered a separate agreement, by its own terms, it is void and of no effect, based on the parties' agreement. Can you give us a final statement, Ms. Harris? Yes, Your Honor. I did want to agree to address the investors' issue with regard to the bio-limits. The court can take judicial notice, but those investors that the Edens have are actually angel investors, and there's a website, and we can provide a letter to the court with a copy of counsel with regard to those websites, where the Edens talk publicly about the fact that they want angel investors so that they can maintain their control of the company and have say, and that these angel investors have low expectations. And finally, I'll just remind the court that in the original pleadings filed by the Edens and by the limits, they strangely filed the original complaint alleging all the claims for declaratory judgment of non-infringement and the other claims, and said all of the claims belong in arbitration. We're not sure why they didn't just file the demand, and instead they filed the complaint, but originally they did say that all of the claims belonged in arbitration. Thank you very much. Thank you very much. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.